USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 09/09/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE ELIBERTO DIAZ SICAP,

                Petitioner,

-against-

THOMAS DECKER, in his official capacity as Director of the New York Field Office of U.S. Immigrations & Customs Enforcement, CHAD WOLF, in his official capacity as Acting Secretary, U.S. Department of Homeland Security, and CARL E. DUBOIS, in his official capacity as Sheriff of Orange County, New York,

                Respondents.

1:20-cv-02638-MKV

OPINION AND ORDER
DENYING PETITION
FOR WRIT OF HABEAS
CORPUS

MARY KAY VYSKOCIL, United States District Judge:

Petitioner Jose Eliberto Diaz Sicap ("Petitioner"), an immigration detainee at the Orange County Correctional Facility ("OCCF"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that his continued detention amid the COVID-19 pandemic violates the Due Process Clauses of the Fifth and Fourteenth Amendments. (Pet. ¶¶ 1, 80–86 [ECF No. 1].) Petitioner requests immediate release from custody. (Pet. ¶ 5.) In the alternative, Petitioner seeks relief pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), and asks the Court to conduct a bond hearing. (Pet. 2 n.2, 29 n.52.) For the reasons discussed below, Petitioner's request is DENIED in its entirety.

## BACKGROUND

The following facts are adduced from the petition, the only submission in this case.

Petitioner is a thirty-five-year-old noncitizen. (Pet. ¶ 2.) He has been in immigration detention at OCCF in Goshen, New York, since February 25, 2020, in conjunction with removal proceedings. (Pet. ¶ 6.) The status of those removal proceedings is unknown.

1

At the time of the filing of this petition in late March 2020, Petitioner alleged that he was "exhibiting symptoms consistent with COVID-19, including a fever and a dry cough." (Pet. ¶ 2.) Officials at OCCF thus placed him in "medical contact isolation." (Pet. ¶¶ 2, 58.) He was tested for COVID-19, but his test results are unknown. (Pet. ¶ 2.)

Petitioner claims COVID-19 is "wreaking havoc" in New York jails and prisons. (Pet. ¶ 34.) The very nature of OCCF, he pleads, "make[s] exposure and spread of the virus particularly harmful." (Pet. ¶ 37.) He further alleges that widespread infection inside OCFF is inevitable "because detainees live, sleep, and use the bathroom in close proximity with others." (Pet. ¶ 40.) Petitioner asserts that detainees are unable to practice social distancing because OCCF does not have space to isolate infected detainees in individual cells. (Pet. ¶¶ 41.) Petitioner alleges that detainees also have no access to hand sanitizer, gloves, or disinfectant wipes and only limited access to soap. (Pet. ¶ 48.)

Petitioner claims he "face[s] an imminent risk of death or serious injury in immigration detention due to COVID-19." (Pet. ¶ 1.) He asserts that "Respondents are unable to protect [him] from serious debilitating complications, or even death, in a jail environment where the disease is rapidly spreading." (Pet. ¶ 3.) Continued detention, he claims, "will likely lead to serious medical repercussions or even death." (Pet. ¶ 5.)

On March 28, 2020, Petitioner filed a request with Immigration and Customs Enforcement, asking that he be released due to the health risks posed by COVID-19. (Pet. ¶ 61.) He also submitted a request to the United States Attorney's Office for the Southern District of New York. (Pet. ¶ 63.)

Two days later, on March 30, 2020, Petitioner filed this petition seeking a writ of habeas corpus, alleging that his conditions of detention at OCCF amid the COVID-19 pandemic violate

2

the Due Process Clauses of the Fifth and Fourteenth Amendments.  (Pet. ¶¶ 80–86.)  He claims Respondents have deprived him of his right to be detained safely and free from punitive conditions.  (Pet. ¶ 81.)  He also claims that Respondents have acted with deliberate indifference to his serious medical needs by failing to take appropriate precautions knowing that such failure could adversely affect his health.  (Pet. ¶ 86.)  Petitioner seeks the following relief: enjoin Respondents from moving Petitioner from the New York City area while habeas proceedings are pending; order Respondents to immediately release Petitioner to end the alleged due process violations and eliminate the risks of severe illness or death from COVID-19; and order Respondents not to re-detain Petitioner pending the culmination of removal proceedings against him.  (Pet. 29–30.)  In the alternative, Petitioner requests that the Court conduct a bail hearing.  (Pet. 2 n.2, 29 n.52.)

Petitioner did not file any documents in support of his petition and has not moved for temporary or preliminary injunctive relief.  As a result, the Court did not direct Respondents to respond.

## **LEGAL STANDARD**

Under 28 U.S.C. § 2241(c)(3), federal courts shall not grant a writ of habeas corpus unless a petitioner "is custody in violation of the Constitution or laws or treaties of the United States."  This provision empowers federal courts to hear claims by noncitizens challenging the constitutionality of their detention.  *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003).  When seeking a writ of habeas corpus pursuant to § 2241, the petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."  *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley*, 506 U.S. 20, 31 (1992); and *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).  Issuance of a writ of habeas corpus "is an extraordinary

remedy" that should be "granted 'only in the exercise of a sound judicial discretion.'" *Pinkney v. Keane*, 920 F.2d 1090, 1094 (2d Cir. 1990) (quoting *Goto v. Lane*, 265 U.S. 393, 401 (1924)).

The Due Process Clause of the Fifth Amendment forbids the government from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases). "An application for habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for an inmate in federal custody to challenge conditions or actions that pose a threat to his medical wellbeing." *Basank v. Decker*, 20 Civ. 2518 (AT), 2020 WL 1953847, at *8 (S.D.N.Y. Apr. 23, 2020) (citing *Roba v. United States*, 604 F.2d 215, 218–19 (2d Cir. 1979)).

To establish a substantive due process violation, a detainee "must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). To succeed on a due process claim, a detainee "must meet two requirements: (1) that [the petitioner] ha[s] a serious medical need . . . , and (2) that the [respondents] acted with deliberate indifference to such needs." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); and *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)). A medical need is "sufficiently serious to be cognizable as a basis for a constitutional claim" where it "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Id.* (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Deliberate indifference is established where the official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [immigration]

4

detainee even though the defendant official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.  Deliberate indifference is "more than mere negligence"; it "involves culpable recklessness, i.e., an act or failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Charles*, 925 F.3d at 87 (first quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996); then quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000)).

## DISCUSSION

The petition for a writ of habeas corpus is denied because Petitioner has not shown that he is in custody in violation of the Constitution.  Petitioner has not alleged, let alone proved by a preponderance of evidence, that he has a serious medical need to justify his release from detention.  The petition is composed of generic concerns over health risks posed by COVID-19, but no indication that Petitioner is immunocompromised or has an underlying medical condition that places him at risk of "death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86.

Petitioner claims that his continued detention at OCCF "will likely lead to serious medical repercussions or even death."  (Pet. ¶ 5.)  Nowhere in the petition does Petitioner allege to have a medical condition that would make him particularly vulnerable to serious injury or death were he to contract COVID-19.  Petitioner has not shown how his individual "conditions and risk factors, individually or taken in their totality, would place him at a substantially heightened risk of either contracting Covid-19 than other members of the general population or more severe consequences to him than members of the general population if he were to contract the disease." *Graham v. Decker*, 20-cv-2423 (PKC), 2020 WL 1847568, at *5 (S.D.N.Y. Apr. 13, 2020.)

In the context of COVID-19, a detainee who fails to show a specific underlying condition that makes the detainee particularly vulnerable to severe illness or death cannot establish a

sufficiently serious medical need that warrants release from detention. *See, e.g.*, *Dzhabrailov v. Decker*, 20-cv-3118 (PMH), 2020 WL 2731966, at *8 (S.D.N.Y. May 26, 2020) (finding no serious medical need amid COVID-19 pandemic where petitioner's medical records revealed no underlying medical condition and did not substantiate alleged claim of chronic heart condition). Indeed, several courts in this circuit have found that underlying medical conditions that are not shown to put detainees at higher risk of severe illness or death if infected with COVID-19 are not sufficiently serious to state a cognizable constitutional claim. *See Vides v. Wolf*, 6:20-CV-06293, 2020 WL 3969368, at *10 (W.D.N.Y. July 14, 2020) (finding alleged asthma and epilepsy did not make petitioner a vulnerable individual in the context of COVID-19); *Roman v. Decker*, 20-cv-3752 (JGK), 2020 WL 4273823, at *5 (S.D.N.Y. July 13, 2020) ("The petitioner has failed to show that he has a serious medical need due to his high blood pressure, immune-compromised state from taking medications for gout, and obesity, that rises to the level the [sic] justifies his release from detention . . . ."); *Graham*, 2020 WL 1847568, at *4–5 (holding that petitioner with a stomach ulcer, acute osteoarthritis, and post-traumatic stress disorder failed to demonstrate likelihood of success on the serious-medical-need prong of his Covid-19-related due process claim). Here, Petitioner has not even alleged any underlying health conditions, let alone offered medical records to support his claim.

Petitioner cites several cases from this district where courts ordered the release of detainees amid the COVID-19 pandemic. In each of those cases, however, the detainees were found to be, in some capacity, "high risk" or particularly susceptible to serious harm if exposed to COVID-19. *See, e.g.*, *Avendaño Hernandez v. Decker*, 20-CV-1589 (JPO), 2020 WL 1547459, at *2 (S.D.N.Y. Mar. 31, 2020) (finding serious medical need where petitioner suffered from rhabdomyolysis and was diagnosed with an "abnormality in his cardiac electrical conduction"); *Coronel v. Decker*, 20-

6

cv-2472 (AJN), 2020 WL 1487274, at *3–4 (S.D.N.Y. Mar. 27, 2020) (finding serious medical need where petitioners demonstrated "co-morbidities that make them particularly vulnerable if they contract COVID-19," including partial removal of organs, type 2 diabetes, obscenity, hypertension, aortic valve disease, and gastrointestinal problems); *Basank v. Decker*, 20 Civ. 2518 (AT), 2020 WL 1481503, at *5 (S.D.N.Y. Mar. 26, 2020) (finding serious medical need where detainees "[e]ach ha[d] underlying illnesses, including asthma, diabetes, heart disease, hypertension, obesity, and respiratory problems including COPD"); *see also Jones v. Wolf*, 20-CV-361, 2020 WL 1643857, at *12 (W.D.N.Y. Apr. 2, 2020) (finding that "those petitioners who have the COVID-19 vulnerabilities identified by the CDC have demonstrated a likelihood of succeeding on their [due process] claim"). Here, Petitioner has not alleged a single underlying medical condition that puts him at an increased risk for severe illness or death from COVID-19. Accordingly, he has not demonstrated a serious medical need. Because Petitioner has failed to demonstrate a serious medical need, he cannot establish a due process violation on the grounds he alleges. The Court therefore need not address the second prong of the substantive due process analysis—whether Respondents have acted with deliberate indifference. *See, e.g.*, *Vides*, 2020 WL 3969368, at *12.

Petitioner requests, in the alternative, that the Court conduct a bail hearing. (*See* Pet. 2 n.2, 29 n.52.) The Court declines to do so. While the Court has authority to grant bail to habeas petitioners, this power is one "to be exercised in special cases only." *Mapp*, 241 F.3d at 226. As the Second Circuit has explained, "a habeas petitioner should be granted bail only in unusual cases, or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Id.* (quoting *Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978)). This is not an unusual case, and there are no exceptional circumstances here that

warrant the Court invoking its authority to grant bail to a habeas petitioner. Moreover, the petition does not state whether Petitioner ever had an initial bail hearing before an immigration judge. This raises potential exhaustion problems. Because a habeas petitioner bears the burden to prove that he is entitled to relief, the deficiencies of the petition with respect to whether Petitioner exhausted administrative remedies constitute an additional ground to deny a writ. *See generally Monterosa v. Decker*, 1:20-cv-02653-MKV, 2020 WL 1847771 (S.D.N.Y. Apr. 11, 2020).

## CONCLUSION

Petitioner has not shown a serious medical need to establish a due process violation. Because Petitioner has failed to demonstrate that he is in custody in violation of the Constitution, the petition for a writ of habeas corpus is DENIED and the case is DISMISSED. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Date: **September 9, 2020**           *Mary Kay Vyskocil*
New York, NY                          **MARY KAY VYSKOCIL**
                                      **United States District Judge**